Thank you, Mr. Luby. May it please the Court? Counsel. Joe Luby, arguing on behalf of the appellant Roderick LaShun Rankin. Your Honors, this is a case in which the district court itself concluded that the evidence of Mr. Rankin's innocence was sufficient to justify a hearing under Schlup. And there are essentially two categories. For me, you need to either get closer to the mic or speak up. Thank you, Your Honor. You can raise that if you'd like. Your Honors, there are essentially two categories of evidence in this case that point to my client's older brother, Rodney, as the individual who committed these murders. The first broad category would be evidence that trial counsel failed to discover and present, despite his own belief that the brother was the murderer. And then, of course, the second category would be the brother's admissions to his pastor, Augustine Bailey. Just so we're all on the same page, so there isn't any confusion, the Pastor Bailey evidence goes solely to our argument under Schlup. And it is not part of our claim that trial counsel performed ineffectively. And that's because those confessions were not available at the time of trial. But there was, of course, plenty of other evidence that was available at the time of trial. And specifically, the victim, one of the victims, Xena Reynolds, moved out of the Rankin home with herself and her two children just before Christmas. The murders then happened on December 27th. The brother had made clear that he would kill anybody who tried to take his children away. On December 20th, or one week before the murder, Xena told her cousin, Tina Beard, that she was afraid of the brother and planned to leave town. And then a couple few months after the murders, the brother was having a custody dispute with the mother of his other children, and he warned her, don't end up like Xena. Obviously, we can see that there's a good deal of evidence, excuse me, on the other side of the ledger. And most importantly, the State relies on threats that my client made to Sonia Reynolds, who is Xena's sister. And specifically, Sonia testified that at some point, and I quote, between November and December, Mr. Rankin threatened Sonia and said that he would kill her and her family if she didn't return to him. Of course, Sonia was not murdered on December 27th. And the next day, when she gave a statement to the detectives, she said that the intruder in the home was shorter than Mr. Rankin and had shorter legs. Counsel also failed to develop the physical evidence that was available to him in the case. As your honors may recall, there were six pairs of jeans that were recovered from behind Mr. Rankin's dresser. One of those pairs of jeans had a bloodstain, and that particular pair was several inches shorter than the others in the legs and noticeably wider in the waist. And I would refer your honors to page 30 of our brief, where we have a photograph that you can compare the different pant sizes. There's also, of course, the shoes that were found under the couch where my client was sleeping when the police arrived, a pair of navy blue size 12 Reeboks. And the State theorized that, or the State proved that it was a size 12 shoe that made the impression on the Halfords' front door. The weight of the evidence that we've presented, however, powerfully suggests that Mr. Rankin's shoe size is 14, that his brother was known by the family to have noticeably smaller feet, and his size was believed to have been 12. Where the district court got off track in this case, your honors, and on this issue in particular, was on the merits of the ineffectiveness claim, and that was the court's reason for withdrawing the hearing that it had earlier granted. The district court, that is, made essentially two errors in rejecting the merits. First is that the court reasoned that by the time of trial, counsel was performing reasonably because he had little room in which to dispute the physical evidence in the shoes in particular. But, your honors, the entire reason that counsel didn't have room at trial to dispute the physical evidence is because counsel didn't investigate his own belief that it was the brother, Rodney, who committed the murders in the first place. Counsel admitted that he simply overlooked the issue of the brother's shoe and pant sizes. Counsel was certainly aware of, excuse me, the brother's failed relationship with Xena Reynolds, but he didn't develop any facts so that he could describe the violent actions toward Xena as part of that relationship, and indeed that's why the relationship fell apart. The district court's second error, your honors, is really its misguided conclusion that the evidence pointing to the brothers would have been inadmissible under Arkansas law. Certainly Arkansas, like pretty much every other state out there, has restrictions on the admissibility of third-party guilt in a criminal case. And Arkansas law really isn't extraordinary or different from that of any other jurisdiction. The basic idea is that evidence of a third party's guilt has to meaningfully connect the third party to the crime and rise above the level of conjecture or suspicion because the defense, after all, is based on reasonable doubt and not conjectural doubt. So the leading case that, as I'm sure you've noticed in the briefing, is the in that particular case the defendants were a couple who were accused of a home invasion robbery and tying up the victim and murdering the victim. And they said, well, there was a pretty similar crime that happened across the Louisiana border not too long ago, about 35 miles away. But they didn't identify who did the other crime, let alone connect that person to the crime that they were accused of committing themselves. So the connection here is fundamentally different. The victim here moved out of the home three days before the killings. She had announced that she was afraid of the brother. And a few months later, the brother all but admitted to having committed the killing when he told his other pair more, hey, don't end up like Xena. Another threshold issue, aside from the merits of the ineffective assistance claim, your honors, is the legal question of whether the Supreme Court's recent decision in Shin versus Ramirez prevents the federal courts, this court and especially the district court, from receiving evidence of, from receiving really and then considering evidence of the underlying defaulted claim of ineffective assistance of counsel. The short answer to that question is no, it doesn't. And it's important, as we've argued in the briefs, to read the Shin case alongside the Supreme Court's other habeas precedents that preceded it. Specifically in the House case in 2006, the court specifically held that section 2254E2, which is the restriction at issue here, does not apply to this type of petition, and that is, and I quote, a first federal habeas petition seeking consideration of defaulted claims based on a showing of actual innocence. More fundamentally, though, the court in House distinguished the miscarriage of justice exception from cause and prejudice. And the court explained that the miscarriage of justice exception is itself an exception to the requirement that a prisoner who has defaulted a claim has to establish cause and prejudice to overcome the default. And the court explained that in the appropriate case, the concerns of comity and finality that underlie the concept of cause and prejudice yield to a court's obligation to remedy an unjust incarceration. Then later in the McQuiggan case in 2014, the court observed that the miscarriage of justice exception survived AEDPA's passage intact and unrestricted. Then, of course, in 2022, we see Shin. Shin, the opinion there, does not even discuss the miscarriage of justice exception in the Martinez framework. It does not cite to House or McQuiggan, let alone purport to overrule those cases. And it is at bottom a case about cause and prejudice, specifically the Martinez framework and the restriction that was then imposed on it. The holding in Shin, if I may quote, is that 2254E2, under 2254E2, a court, quote, may not conduct an evidentiary hearing or otherwise consider evidence beyond the record based on ineffective assistance of state post-conviction counsel. Mr. Rankin's request, Your Honors, for a hearing is not based on the ineffective assistance of post-conviction counsel. It is based on his innocence. And that issue is governed by House and Schlup and McQuiggan. Those cases remain binding on the lower courts on this particular issue until such time as the Supreme Court sees fit to overrule them. Finally, Your Honors, I don't think I saw House discussed by the dissenters in Shin. No. And I think the reason for that, Your Honors, is that there was no reason for the dissenters to discuss House because Shin was not purporting to limit evidence in cases where the reason for reaching the merits of the claim is the prisoner's innocence instead of the ineffectiveness of post-conviction counsel. The issue simply was not before the court, and the court did not purport to address it. If I might add a little bit, the question presented in Shin is whether the equitable rule announced in Martinez permits a federal court to dispense with Section 2254E2's narrow limits because a prisoner's state post-conviction counsel negligently failed to develop the state court record. We conclude that it does not. And so the reason that the dissenters wouldn't have addressed House is that House involved a completely different issue that the majority wasn't purporting to address, and they're talking about the fact that the Martinez exception, as a matter of cause and prejudice, doesn't overcome 2254E2. If the court had been riding on an entirely blank slate, perhaps one might infer from Shin that the court was intending to so extend subsection E2, but had the court been doing that, it would have overruled its previous precedents, and it certainly should not be presumed to have done that without mentioning them. Finally, Your Honors, I'd like to turn to the penalty phase instructional claim that is under Mills v. Maryland. For the purposes of this claim, there is not any dispute that Form 2, that is the mitigating instruction claim, deviated from the Arkansas pattern instructions by requiring that any mitigating circumstance in order to be identified had to be found by the unanimous consent of the jurors. The only dispute is whether Form 3, that is the weighing instruction, cured that particular defect in Form 2 insofar as it instructed the jurors to sentence Mr. Rankin to death if the aggravating circumstances outweighed any mitigating circumstances believed to exist by any juror. But the record makes clear that Form 3 cannot have remedied the defect in Form 2, and specifically, I would refer the court to the trial judge's remarks, and this is at page 844 of Volume 3 of the State's appendix. And the court said, Form 3 deals with the conclusions that you would have reached from consideration of Form 1, that is the aggravators, and Form 2, the mitigators. In other words, a mitigator is considered in the Form 3 consideration if it's found in Form 2, and it can't be found in Form 2 unless it is so found by the unanimous tally of all of the jurors. A related problem with the district court's reading and that of the State is that it would tend to make Form 2 superfluous. There would be no point in asking the jurors, hey, which mitigating circumstances do you find unanimously, if they could then base a sentence on any mitigating circumstance found by any of them. So a reasonable juror would not read the totality of the instructions in such a way as to render one of them meaningless. It seems to me, Counsel, that your reading of Form 3 requires the court to disregard the actual language of that form. It's rather clear. The jury was asked to consider any mitigating circumstances found by any juror, and you're just saying we could just ignore that. And if that's what I said, I misspoke, Your Honor. And I agree with Your Honor's premise that Form 3 on its face is clear, but Form 3 isn't the only guidance that was at issue here. There was contradictory guidance in Form 2. But don't we look at the totality of the jury instructions? Absolutely, you would look at the totality of the instructions. And our showing is that the district, or excuse me, the trial judge, in fact, conveyed the directive of Form 2 on four separate occasions. And obviously, looking at the totality of instructions, the entire point is that Form 2 has to be read alongside Form 3. And there's no way to make sense of Form 3. Excuse me. There's no way to make sense of the totality of the forms requiring a unanimous finding unless really Form 2 is completely ignored. I'm wondering whether the guilt of the brother is actually new evidence. I know that the pastor's deposition wasn't available at the time, but I think your client told his lawyer that the brother did it at the time. So I'm wondering if that really constitutes new evidence. It doesn't for a number of reasons, Judge Grunder. The most basic reason is that the mere fact that the brother may have admitted to my client that he committed the murders is separate and distinct from the brother's admission to a neutral third party much later that he committed the  And certainly, there's no reason that my client would have been on notice, well, gosh, he admitted it to me. I better go and ask the pastor just in case. And even if he had, he wouldn't have learned about those admissions. And even if he had tried to put his brother's admission in the trial record, it would have been excluded as hearsay. That would be one reason. The other reason, Your Honor, respectfully, is that the new evidence requirement that is based on this Court's case law in Amrine and the Ricky Kidd case, those have really been aggravated, excuse me, those have been abrogated by the U.S. Supreme Court's decision in McQuiggan, where the Court was applying the Shloop standard and said that we don't consider diligence and the timeliness and the newness. And we've held that? We've acknowledged that? No, Your Honor. There are two post-McQuiggan cases that I've cited in the reply brief that do not cite McQuiggan. But nonetheless, McQuiggan makes absolutely clear that diligence is an evidentiary factor to consider as to whether the evidence of innocence is credible, and it's not an absolute requirement in order for the evidence to be considered. So you're conceding your argument is contrary to Amrine? I'm conceding that that part of the argument is contrary to Amrine. But even under the Amrine case, Your Honor, the evidence would still be new, because I think it's untenable to say that my client's brother's admission to my client put my client on notice of his brother's lengthier admissions to a third party, the  And so I meant to make those arguments in the alternative. Yeah. I guess my concern is, do we focus on the particular little piece of evidence, i.e., the confession to the pastor? Or is it really the broader question of the brother's guilt being well known to your client and his lawyer? Well, the client's own guilt will always be well known to the client himself. And so if that's the test for diligence, then it really would just disable the entire miscarriage of justice framework. I do think the Court has to look at the totality of the evidence. And even the evidence that wasn't, that isn't new under Amrine, that is, the evidence underlying the IAC claim, is still relevant, because it is consistent with the evidence from the admissions to the pastor. For example, the brother came to the pastor two weeks before the murders and said he was furious with Zina Reynolds because she was trying to take the children away and he would kill her. Well, that's consistent with the other threats that we've been discussing this morning. If there are no further questions, I will reserve the rest of my time for rebuttal. Thank you, Your Honors. Ms. Galloway? May it please the Court, Roderick Rinken repeatedly threatened to murder Sonia and her family after she broke up with him. Shortly thereafter, in December of 1994, he did just that. He made good on his repeated threats. He murdered Sonia's mother, stepfather, and sister and left their bodies covered in blood in front of two very small children. Sonia identified the murderer by the clothing he wore. Rinken confessed to the murders and he admitted that the clothing identified by Sonia was his. He was also linked to the murder weapon. For this crime, he was sentenced to death. I'm going to start by trying to answer some of the questions that y'all asked opposing counsel. First, in House B, Bell, the United States Supreme Court did not say that satisfaction of sloop also meant that you didn't have to satisfy 2254E2 in order to get an evidentiary hearing. House was concerned about what the new standard post-EDPA was for sloop. The Court made clear that Petitioner only needed to show that it was more likely than not that no reasonable jurist would have found him guilty in order to overcome the procedural default of a claim. On the other hand, in order to get an evidentiary hearing under 2254E2, Petitioner needs to show by clear and convincing evidence, which is a higher, more rigorous standard of the underlying crime. The United States Supreme Court in Williams v. Taylor actually said that Congress eliminated the miscarriage of justice standard to an evidentiary hearing when it enacted 2254E2. Even if Rankin were to satisfy sloop, which we say he cannot, he would not get an evidentiary hearing on any of his underlying claims unless he could also meet 2254E2 standards. The United States Supreme Court in Shen made one notation about actual innocence, and it said that the Court has no power to layer an actual innocence exception on top of the narrow limitations already enacted in 2254E2. In doing that, the Court actually quoted McQuicken's. 2254E2 is still applicable in this case to the merits of any underlying claim. For that reason alone, Rankin's procedurally defaulted claims, such as that counsel was ineffective for failing to investigate and present evidence that his brother committed the crime, fails on the merits because the claim is completely meritless without his expanded state court record. Also on the sloop standard, Rodney's confession to Pastor Bailey is not new evidence under circuit precedent. The basis of his sloop claim is that Rodney did it. The fact that Rodney confessed to Pastor Bailey in addition to confessing to Rankin himself does not make the evidence new. It just merely might change who would be testifying about the evidence. But the foundation of the claim, Rodney's confession, was known and available to Rankin prior to trial, and Rankin chose not to put on that evidence at trial. Instead, he testified under oath at trial that my brother had nothing to do with the murder. And then in Rule 37, both Rodney and Rankin's mother testified at the Rule 37 hearing that Rodney and Rankin were together on the night of the murder playing video games until 2 a.m. So it is simply too late now, decades later, for Rankin to point the blame at his brother. Turning now to the Mills claim. The standalone Mills claim is procedurally defaulted, and Rankin cannot overcome that procedural default under the sloop standard because he cannot meet it. The ineffective assistance of counsel claim based on the jury instruction also fails. As the district court correctly explained, the Form 2 instructions were a shortened, non-model jury instruction. And it did say that the jurors were to find mitigating circumstances on Form 2 unanimously. But that was not the only instruction the jury was given. Form 3 very specifically directed the jury to consider any mitigating circumstances found by any juror to exist. There is no reason to believe that the jury disregarded Form 3 in this instance. These instructions were unlike those in Mills and McCoy. Both of those cases dealt with the weighing instruction, and those weighing instructions mandated that jurors could only consider mitigating circumstances that were unanimously found. And that simply isn't the case here. Overall, viewing all the instructions, Rankin's jury was correctly instructed. And so the ineffective assistance of counsel claim fails because the counsel cannot be ineffective for failing to make a meritless argument. I would also like to briefly turn to Rankin's intellectual disability claim that the Arkansas Supreme Court reasonably adjudicated before trial. As this court's recent decision in Roberts noted, a state court's decision on the statute, even if it predated Atkins, was an adjudication on the merits and entitled to deference. Here, the Arkansas Supreme Court correctly cited the state's three-prong statute. It understood and noted that intellectual disability encompassed more than an IQ score. The court considered evidence about Rankin's two IQ scores, his standardized testing scores, his overall adaptive functioning. And it determined, based on the evidence before it, that Rankin was not intellectually disabled. And that factual finding is supported by evidence in the state court record. And for that reason, 2254D2 prohibits habeas relief. This is not one of those extreme malfunctions in the state court system that habeas relief is permitted. And if there are no specific questions, I will stand on my briefing. Thank you. For a moment. Just a few points for you, Your Honors. On the question of House v. Bell as opposed to Shin, House, in fact, did hold that Section 2254E2 does not apply to this type of petition. It was not simply addressing the burden of proof, that is, clear and convincing evidence versus more likely than not. It, in fact, said the statute itself was not applicable. The statute, in turn, in relevant part, says that the evidence underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the offender guilty of the underlying offense. That's the very statute that the State is trying to invoke, and that's the very statute that the State is trying to say now applies to Shlue claims because of Shin, even if it didn't apply before. And in that, it is unlikely that that is the case, because when House made the statement that it did, it was speaking about the entirety of the statute. As to the Shin opinion itself, yes, there's that discussion of Section E2, and whether there is an innocence exception to E2 itself, but that discussion presupposes the applicability of Section E2 in the first place, that is, that the applicant has failed to present the facts through ineffective post-conviction counsel. And as discussed, this is an innocence case. It is not a Martinez case in which we are relying on the ineffectiveness of such counsel. A few remarks on the Mills claim, if I may. The problem that we have is that the jurors didn't have a mechanism to give effect to any non-unanimously found mitigating circumstances, because the judge explained that Form 3 is the instrument by which the jurors put in their findings from Form 1 and Form 2. And a mitigating circumstance appears on Form 2 only if it is unanimously found. So there is really no mechanism in Form 3. But why do we need a mechanism? I thought the question was whether they were properly instructed what they could consider. Yes. And taken as a whole, the instructions effectively limit the consideration to those mitigation factors that were found unanimously, as we've argued, Your Honor. Your voice dropped off. I didn't hear what you said at the end. I apologize, Judge. The totality of the instructions make clear that the jurors don't have any means to give effect to a mitigating circumstance on Form 3 if they didn't find it unanimously on Form 2. As my opponent notes, this is also a Martinez claim. And so the Court does not have to find that Mr. Rankin is innocent in order to consider and grant relief on this particular claim. It is simply that the ineffectiveness of counsel is demonstrated on the trial record alone, as we've argued in the briefs. Thank you, Your Honors. Thank you. Thank you, counsel. The case has been thoroughly briefed. An argument has been helpful. A lot of issues are never easy. We'll take them under advisement.